Rockingham
No. 98-213

## Town of Nottingham

### v.

## Robert A. Bonser and Cedar Waters Village, Inc.

May 21, 2001

*Borofsky, Lewis & Amodeo-Vickery, P.A.*, of Newington (*Mark S. Gearreald* on the brief and orally), for the plaintiff.

*William Dewhurst*, of Nottingham, by brief and orally, for the intervenor, Cedar Waters Village Partnership (1994).

*Terry L. Bonser* and *Mary L. Bonser*, by brief and *Ms. Bonser* orally, as intervenors, *pro se*.

BRODERICK, J. The intervenors, Cedar Waters Village Partnership (1994), Terry L. Bonser and Mary L. Bonser, appeal a Superior Court (*McHugh*, J.) ruling that certain land owned by the partnership is subject to levy for the fines assessed against the defendants, Robert A. Bonser and Cedar Waters Village, Inc., in favor of the plaintiff, Town of Nottingham. We affirm.

I

The history leading up to the present dispute is lengthy, and many of the details can be found in *Bonser v. Courtney*, 124 N.H. 796

(1984), *Town of Nottingham v. Bonser*, 131 N.H. 120 (1988), and *Knox Leasing v. Turner*, 132 N.H. 68 (1989). We recite only those facts necessary for an understanding of the present appeal.

In 1981, the Town of Nottingham (town) brought suit against the defendants, Cedar Waters Village, Inc. (corporation) and Robert A. Bonser, its principal, to compel compliance with a zoning ordinance governing the placement of certain mobile homes on the corporation's property. After a hearing, the court issued a ruling in the town's favor ordering the defendants to comply with the relevant zoning regulations and ordinances by September 1, 1982. The court also authorized the town to remove the homes from the property for noncompliance. After prolonged litigation, in May 1986, the court found the defendants in civil contempt for their failure to remove the mobile homes and assessed a fine against them of $1,000 for each day the homes remained in place.

Over the ensuing months, the fine accrued, and in March 1987, the town sought to attach the corporation's real estate to ensure collection. The defendants objected, and a hearing was set for May 1987. Approximately one week before the scheduled hearing, Robert Bonser dissolved the corporation and, with his wife, Mary T. Bonser, took title to all of the corporation's realty, including the land upon which the offending mobile homes were located. The next day, the Bonsers transferred the property to a newly formed entity, Cedar Waters Village Partnership (partnership), consisting of Robert, his wife and their son, Terry L. Bonser. In June 1987, the court granted the town's motion and ordered attachments against both the corporation and Robert Bonser. By that time, however, the partnership had taken title to all of the corporation's real estate.

When the town learned of the conveyances, it filed a motion to set them aside on the basis of fraud. It alleged that the corporation had not received fair consideration for the property and that no provision had been made to satisfy its outstanding fine. Copies of the town's motion were forwarded to corporation counsel, Robert Bonser, Mary T. Bonser and their son, Terry. The partners, who identified themselves as intervenors, and the corporation each objected to the town's motion and asserted that the conveyances were not fraudulent and, in fact, had been made for good and lawful consideration and for valid business reasons.

By January 1988, the partnership, which had moved to intervene in the fraudulent conveyance proceeding, was permitted to do so. In August 1989, the trial court also permitted the partnership to intervene in the underlying zoning litigation.

In July 1990, after a hearing, the court determined that the total fine then due to the town by the corporation and Robert Bonser was $1,453,000. It ordered an attachment not only against the defendants, but also against the partnership, which held title to the mobile home property. The court based the attachment against the partnership on the fact that its property was the subject of the pending fraudulent conveyance motion. In the same order, ruling that there was substantial identity between the partnership and the corporation, the court denied the partnership's motion to dismiss itself from the suit. The defendants and intervenor partnership appealed this order, and we remanded the case to the trial court solely to review the amount of the fine.

In 1993, following the remand, the trial court conducted a new hearing and ordered the corporation and Robert Bonser to pay the town $183,850, plus $122,364.98 in attorney's fees. On appeal, we summarily affirmed the trial court's order. Following further litigation throughout 1994 and 1995, the trial court issued writs of execution against the corporation, Robert Bonser and the partnership in January 1996. At this point, the partnership consisted of Terry L. Bonser and his wife, Mary L. Bonser (apparently the same person as "Mary L. Parks Bonser") as individual partners. Documents filed with the secretary of state show that Mary L. Bonser replaced Mary T. Bonser in 1991 and that Robert A. Bonser died in 1994.

In March 1997, the partnership and the individual partners, Terry L. Bonser and Mary L. Parks Bonser, filed suit in federal court. They alleged that the writ of execution issued against the partnership violated due process because there was no superior court order subjecting the partnership and its partners to liability for civil contempt and no judgment in favor of the town on its motion to set aside the 1987 conveyances for fraud. During the same month, the partnership and the partners, Terry L. and Mary L. Bonser, sought a hearing in the trial court to have the court identify the judgment or order that supported the 1996 execution against the partnership's real estate.

In July 1997, the federal court ruled that it would abstain from the case for the time being because it was "satisfied . . . that [the trial court would] fully and fairly consider and rule upon [the federal] plaintiffs' apparent claims" that no existing court order supported the writ of execution against the partnership. It identified specific concerns to be addressed by the trial court, including whether any judgment existed declaring the 1987 transfers voidable for fraud,

and thus subject to levy to discharge the court-ordered fine and attorney's fees.

In November 1997, the trial court issued an order in response to the federal court's ruling and the motion for hearing filed by the partnership and the individual partners. It acknowledged that it found the partnership or the partners liable for the contemptuous actions of the corporation and Robert Bonser, and that it had never held the partnership or the partners in contempt. The trial court conceded that it had never directly ruled on the town's fraudulent conveyance motion. The court explained, however, that a hearing on the merits never occurred because, in response to the town's motion to set aside the conveyances, "the Bonsers" pledged Robert Bonser's personal assets and the partnership's real estate upon which the mobile homes sat to satisfy any future judgment secured by the town. In its November order, the court stated that it would review the merits of the fraudulent conveyance matter because "the Bonsers" were *now* arguing that the town could not reach the real estate to satisfy the contempt judgment. After detailing the relevant history, which included the fact that the corporation's property was conveyed without consideration, the court made a *prima facie* finding that the 1987 conveyances were fraudulent. It allowed "the Bonsers" sixty days to present contrary evidence.

In their response, the partnership and the partners, Terry L. Bonser and Mary L. Parks Bonser, essentially claimed that the trial court's order exceeded the intended scope of the July 1997 federal court ruling because it provided new findings rather than simply responding to inquiries about the existence of an order to justify the 1996 execution against the partnership. They did not, however, offer any evidence to counter the court's *prima facie* finding of fraud. The trial court issued a final order concluding that the undisputed facts clearly established that the 1987 conveyances were fraudulent. It set aside the 1987 transfers, making the real estate available to satisfy the judgments against the corporation and Robert Bonser, and re-issued the attachment against the partnership.

The intervenors, consisting of the partnership and Terry L. and Mary L. Bonser, then appealed to this court and filed a motion in federal court to bring their earlier action forward. In June 1998, the federal court elected to abstain until the State appeal was concluded. In its order, the federal court observed that the trial court "clearly *agreed* that no findings, rulings, or judgments were ever issued or entered against the . . . partnership, Mary [L.] Parks Bonser, or Terry Bonser that would require them, personally, to pay money to the court or to the town, or to pay the obligations of the

prior owners." It noted that the trial court proceeded *sua sponte* in ruling that the 1987 property transfers were fraudulent, and that "without [a] hearing or trial involving the [partnership, Terry L. Bonser or Mary L. Parks Bonser,]" the trial court declared the property to be subject to levy for the fine issued against the corporation and Robert Bonser. The federal court left us to decide whether the trial court's decision, and "the unique process that produced it, comport[ed] with New Hampshire law, and state and federal constitutional guarantees . . . ."

## II

The principal issue in this case is whether the intervenors' due process rights under the New Hampshire and United States Constitutions were violated when in 1997 the court ruled on the fraudulent conveyance matter and reissued the attachment against the partnership. The intervenors argue they were not given sufficient notice and an opportunity to be heard before the trial court set aside the conveyances.

We consider first the defendant's arguments under Part I, Article 15 of the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231 (1983), employing federal cases only to aid in our analysis. Because the New Hampshire Constitution is at least as protective as the Federal Constitution in this area, we need not make a separate federal analysis. *See State v. Newcomb*, 140 N.H. 72, 78 (1995). The Due Process Clause of the State Constitution requires that, prior to any proceeding involving the deprivation of significant property rights, "the State must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *White v. Lee*, 124 N.H. 69, 75-76 (1983) (quotation omitted). After reviewing the record, we conclude that the intervenors suffered no constitutional deprivation.

The record reflects that after the town filed its motion to set aside the questioned conveyances in 1987, the partnership, with Robert, Terry and Mary T. Bonser as its partners, subsequently intervened and filed a detailed objection. For various reasons, the trial court did not directly address the town's motion until 1997, after the intervenors had pursued an action in federal court. Although the zoning matter apparently concluded in 1996 with the issuance of writs of execution, the trial court docket was revived by the intervenors' 1997 motion for a hearing.

In its November 1997 order, the trial court noted that it had previously indirectly addressed the fraudulent conveyance claims

but had not formally ruled on the town's motion. Accordingly, it addressed the merits of the fraud claim. As part of its order that the evidence established a *prima facie* case of fraud, the trial court gave "the Bonsers" sixty days to establish that the 1987 conveyance to the partnership was lawful. In context, the court's reference to "the Bonsers" collectively referred to the partnership, Terry L. Bonser and Mary L. Bonser, because the partnership had filed the hearing motion, which led to the court's ruling. Additionally, the November 1997 order was mailed only to partnership counsel, Terry Bonser, Mary L. Parks Bonser and town counsel.

■ The intervenors claim that such notice was insufficient since they were not parties to the litigation, and no notice was sent to the corporation or to Robert Bonser. We conclude that notice to the intervenors was sufficient because, by definition intervenors have a *direct and apparent interest* in the subject matter of the litigation, *Clipper Affiliates v. Checovich*, 138 N.H. 271, 277 (1994), and by virtue of their status, they were parties to the case. *See, e.g., Labrecque v. Town of Salem*, 128 N.H. 455, 457 (1986) (court referring to intervenor as "party defendant"). Therefore, the court properly provided notice to the intervenors of its intent to rule on the fraud matter. We do not address the sufficiency of the notice to Robert Bonser and the corporation because the intervenors have no standing to assert any due process violations on their behalf. *See Petition of Burling*, 139 N.H. 266, 272 (1994) (person generally has standing to raise constitutional violation when individual's own personal rights have been or will be directly and specifically affected).

■■ Contrary to the intervenors' claim, the trial court did not violate their due process rights by failing to conduct a hearing on the town's fraudulent conveyance motion. An actual hearing is not required to satisfy due process. Rather, a party must be given an adequate opportunity to present objections and make its case. *See White*, 124 N.H. at 75-76. Here, the court provided the intervenors sixty days to present evidence to counter its *prima facie* finding of fraud. The court instructed the parties that no hearing would be scheduled unless the intervenors offered contrary evidence establishing such a need. Because the intervenors offered no contrary evidence and did not request a hearing, the trial court decided the matter on the pleadings and rendered a decision adverse to them. Under these facts, the intervenors were afforded an adequate opportunity to oppose the town's allegations and the court's *prima facie* finding but chose not to avail themselves of it.

We recognize, as did the federal court, that the procedural roadmap in this case is unique. Certainly, it is not typical for a substantive order supporting a writ of execution to be issued *after* the execution is issued. The trial court, however, outlined the various circumstances that delayed a formal ruling, including representations made to it in 1987 that the partnership property would be available to satisfy the outstanding contempt judgments. In the corporation's objection to the town's fraudulent conveyance motion, the corporation represented that "the partners are willing to assume full liability and responsibility for the obligations of the corporation," and that the partners took the property "subject to the attachment that was ultimately granted . . . ." While not authored by the partnership itself, these representations were fairly attributable to it because the corporation certified that it provided the individual partners with an official copy of its objection and neither the partnership nor its partners made any effort to correct any perceived misstatement. Apparently, the partnership did not truly contest the fraudulent conveyance claim, and decided to concentrate its efforts on appealing the merits of the zoning matter and the related contempt judgments. Accordingly, given the peculiar circumstances of this case, we cannot say that the unique procedural path followed by the trial court violated due process when, as noted, the intervenors received ample notice and had an opportunity to be heard before the court formally ruled on the town's motion to set aside the real estate in 1997.

## III

The intervenors argue that the trial court erred in reviving the town's fraudulent conveyance motion which had been pending for more than three years without any action on the docket and that it should have been dismissed under Superior Court Rule 168.

Rule 168 provides, in pertinent part, that "[a]ll non-jury cases, civil and equity, . . . which shall have been pending . . . three years, without any action . . . other than being placed on the trial list, shall be marked 'non-suit' or 'dismissed' as the case may be, and notice thereof sent to the attorneys."

The trial court noted that Rule 168 exists "to enable the Court to dismiss cases in which neither party has sought a hearing for an extended period of time." It stated, "The Court has found from past experience that inaction on the part of the parties in these cases generally means they have settled their dispute but have failed to so inform the Court." It ruled that the fraud case constituted "an

exception" to Rule 168 because the inactivity was the result of the parties' election to concentrate on the merits of the underlying case, and because the parties treated the fraud claim and underlying case as one despite their separate docket numbers.

■ We agree with the trial court that the fraud action did not lapse under Rule 168. By its terms, the rule is a termination mechanism for truly dormant cases. Although the fraud case and the underlying zoning matter with its related contempt issues were assigned separate docket numbers, the cases more closely resembled bifurcated issues of a single matter. In fact, the record reflects that the court and the parties treated the fraud and zoning actions as a single case and simply addressed the related issues in a sequential manner. For example, in the same 1993 order in which the court granted the attachment against the partnership in the zoning case, it awarded the town reimbursement for "all expenses related to the bringing of the fraudulent conveyance case." As a single case for purposes of Rule 168, the dispute between the parties, which included issues of zoning compliance, contempt and fraudulent conveyances, never lay dormant for a single year from 1981 through the present. Therefore, we hold that under the unique facts of this case, Rule 168 did not preclude the court from addressing the fraud matter.

## IV

The intervenors next argue that the partnership's title to the real estate formerly owned by the corporation cannot be defeated by the trial court's fraudulent conveyance ruling because the partnership was a "subsequent transferee" under RSA 545-A:8 (1997). They assert that several transfers occurred after the 1987 conveyances and before they obtained title to the property. As a result, they conclude that they are "subsequent transferees" and cannot be disgorged of the property.

The intervenors rely on changes to the composition of the partnership as evidence that the real estate changed ownership. Namely, in 1991, Terry's wife, Mary L. Bonser, replaced Robert's wife, Mary T. Bonser, as a partner. In 1994, Robert Bonser died, leaving Terry and Mary L. Bonser as the remaining partners. The intervenors assert that such changes resulted in a new partnership entity and a property transfer to the reformed partnership.

■ ■ The intervenors' "subsequent transferee" argument fails regardless of which version of the fraudulent conveyance statute is

applied. Under the version in effect at the time of the 1987 conveyance, *see* RSA 545:9, I (1974), a creditor with a matured claim could not set aside a conveyance to "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who . . . derived title immediately or mediately from such a purchaser." Similarly, the present version of the statute provides: "A transfer or obligation is not voidable under RSA 545-A:4, I(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." RSA 545-A:8, I (1997). According to the plain language of both versions of the statute, *see Snedeker v. Snedeker*, 145 N.H. 19, 20-21 (2000), to enjoy the protected status of "subsequent transferee," one must obtain the property from an owner who has paid fair consideration without knowledge of any fraud. The intervenors present no evidence that any of the partnerships, assuming their divisibility, or Robert and his wife ever gave fair consideration for the property. Moreover, Terry Bonser remained a partner from the time of the 1987 conveyances, and thus any subsequent partnership could not have taken the property without knowledge of the prior fraud. *See* RSA 304-A:12 (1995) (knowledge of partner attributable to partnership). Because there is no evidence establishing that anyone in the chain of transfers provided fair value for the property without knowledge of fraud, no one in the chain could have obtained the property as a "subsequent transferee."

V

The intervenors further argue that the trial court erred in placing the burden of proof on them to defend against the town's claim of fraudulent conveyance. Relying on RSA 511-A:6 (1997), they assert that the defendant transferor, the corporation, and not the partnership, was required to prove that the conveyance was not made to hinder or impede the collection of a judgment.

RSA 511-A:6 provides in pertinent part that: "In any proceeding brought by the plaintiff under RSA 545:10, the burden shall be upon the defendant to show that any conveyance made or obligation incurred by him during this period was not made to hinder or impede collection of any judgment."

In its November 1997 order, the trial court identified the "triple burden of proof" that the intervenors needed to meet in order to counter its *prima facie* finding of fraud. It stated that:

> [The intervenors] must first submit evidence that the transfer itself is not fraudulent; in other words, that there

was a good-faith purpose for the conveyance of the real estate from the corporation to the partnership and that it was made for reasonable consideration. Secondly, they must present evidence as to why the timing of the transfer, given the pending Petition to Attach, was not in violation of RSA 511-A:6. Finally, they must show that notwithstanding the transfer, the original defendants had sufficient assets to satisfy the eventual contempt findings of the Court.

■ We need not decide whether the trial court erroneously placed the burden outlined under RSA 511-A:6 on the intervenors. The trial court articulated a three-part burden of proof for the intervenors to meet in order to counter its *prima facie* finding of fraud. The intervenors challenged only one component, and made no attempt to present evidence as to the remaining components. Therefore, even if the court incorrectly expected the intervenors to meet the burden identified in RSA 511-A:6, their failure to attempt a showing under the remaining two components of the burden constituted an independent ground to uphold the court's final fraudulent conveyance ruling. Accordingly, we do not address the intervenors' specific claim of error. *Cf. State v. Monroe*, 142 N.H. 857, 873 (1998), *cert. denied*, 525 U.S. 1073 (1999).

VI

■ The intervenors next contend that the fraudulent conveyance claim is barred by the statute of limitations, *see* RSA 545-A:9, because the property was transferred several times after 1987, the original fraud action lapsed under Superior Court Rule 168, and any new challenge would be time barred. The town, however, filed its motion to set aside the 1987 conveyances approximately one month after they occurred, *see* RSA 545-A:9 (1997), and as we concluded earlier, the fraud action did not lapse under Rule 168. Further, the intervenors cite no authority for the proposition that a new action must be filed each time the property is subsequently transferred. Accordingly, we reject the argument that the fraudulent conveyance claim was time barred.

VII

The intervenors also argue that the town lost the right to collect fines and penalties, and the court no longer retained jurisdiction, because no named defendants remain in the matter. They assert that once Robert Bonser died in 1994, the town failed to add his estate as a party defendant and file as a creditor in probate court. As a result,

they contend that the town is now time barred from pursuing an attachment against the real estate pursuant to RSA 556:29 (1997).

■ The court orders on appeal address a single issue: whether the 1987 transfers of the corporate property to Mary T. and Robert Bonser, and ultimately to the partnership, were fraudulent and voidable. The collectibility of the contempt fines against the corporation and Robert Bonser, judgments which have long since been final, does not fall within the appellate scope of the orders before us. To the extent the intervenors argue that the corporation and Robert Bonser were necessary parties to the fraud action, and thus their non-existence undermines the validity of the fraud orders on appeal, we reject it. We have previously decided that transferors are not necessary parties to a fraudulent conveyance action. *See Tsiatsios v. Tsiatsios*, 144 N.H. 438, 444 (1999). It is sufficient to assert a claim solely against the recipient to secure the fraudulently conveyed property. *See id.* Accordingly, the intervenors' claim of error fails.

## VIII

The intervenors next argue that the trial court abused its discretion by *sua sponte* reviving the lapsed fraudulent conveyance action. They assert that the superior court "appears to have been acting as advocate for the town . . . to protect their sizeable monetary interests," and that its action was "arbitrary, unreasonable, unconscionable, and deeply offends the spirit of comity that must exist between the various courts."

■ The trial court did not act *sua sponte* to revive the fraud matter. It responded to the intervenors' motion for a hearing and the federal court's abstention order which suggested that the trial court rule on various issues, including the apparent lack of a formal ruling and the order on the fraudulent conveyance motion. We cannot say that it was unreasonable for the trial court to interpret the federal abstention order as inviting it "to explain how the real estate . . . titled to [the partnership] could be used to satisfy the outstanding judgments in the absence of a formal finding of contempt as against Terry L. Bonser, Mary L. Bonser and the partnership." At the federal court's invitation, the trial court issued a formal ruling on the fraud matter affording the partnership its due process rights to notice and an opportunity to present its case. We need not address the intervenors' concerns about the court's alleged partiality, arbitrariness and capriciousness because we have already rejected their specific challenges to the due process afforded them and the substantive rulings of the court.

## IX

Finally, we do not specifically address various discrete arguments made by the intervenors because we addressed them in the context of our analysis of other arguments. The intervenors' remaining contentions are not addressed because they either were not preserved below, *Quirk v. Town of New Boston*, 140 N.H. 124, 128 (1995), or lack merit and warrant no further review, *Vogel v. Vogel*, 137 N.H. 321, 322 (1993). All issues raised in the notice of appeal but not briefed are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

For the reasons stated above, we affirm the trial court's fraudulent conveyance ruling and its order authorizing the attachment of partnership property.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.