Hillsborough-southern judicial district
No. 2001-320

## *IN RE* ADAM M.

Argued: May 8, 2002
Opinion Issued: July 22, 2002

*Philip T. McLaughlin,* attorney general (*Ann F. Larney,* associate attorney general, on the brief and orally), for the State.

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent, Richard M.

*Paula J. Werme,* of Boscawen, on the brief and orally, for Tanya B.

*David N. Sandberg,* of Manchester, by memorandum, for the guardian ad litem, Court Appointed Special Advocates of New Hampshire, Inc.

DUGGAN, J. The division for children, youth and families (DCYF) appeals the decision of the Superior Court (*Hollman,* J.) denying its neglect petition against the respondent, Richard M. We reverse and remand.

Richard M. is the biological father of Adam M., who was born in November 1996. In December 1997, Richard was arrested and detained in Maine. In July 1998, he was convicted of robbery and terrorizing and sentenced to twelve years in the Maine State Prison. His earliest possible release date is 2008. In October 1998, Adam was removed from the custody of his mother pursuant to a finding of neglect by the Nashua District Court. The court gave DCYF legal custody and placed Adam in the physical custody of his maternal grandmother and step-grandfather. In March 2000, the couple indicated that they were no longer able to act as caretakers for the child. Richard submitted to DCYF the names of alternate caretakers. However, they were found to be unacceptable, and Adam was placed in foster care.

In August 2000, DCYF filed a neglect petition against the father in district court, alleging that he is unable to discharge his parental responsibilities due to his long-term incarceration. *See* RSA 169-C:3, XIX(c) (Supp. 2001). The district court found that Adam was a neglected child within the statutory definition. The father appealed to the superior court, which held a trial *de novo* and denied the petition for neglect.

The superior court based its decision on the nature of the relationship between the father and son. Specifically, it found that, prior to going to prison, Richard "was a loving, attentive and devoted father who played an important part in nurturing the child and providing him with parental warmth and affection." In addition, the court relied on testimony from Adam's step-grandfather, who stated that he takes the child to visit the father in prison twice a year, that the father calls and talks with Adam approximately once a month, and that the father frequently sends cards, letters, paper cutouts or wooden toys and has twice sent the child money he earned by selling his wooden handiwork in the prison shop.

Adam's guardian ad litem, Court Appointed Special Advocates of New Hampshire (CASA), moved for reconsideration, which was denied. On appeal, DCYF argues that the trial court erred because it disregarded important parental responsibilities and failed to consider numerous factors relevant to determining Richard's ability to fulfill these obligations.

We will uphold the rulings and findings of the trial court unless they are unsupported by the evidence or tainted by error of law. *In re Craig T.*, 144 N.H. 584, 585 (1999). As the trier of fact, the trial court is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. *Id.* Consequently, our task is not to determine whether we would have found differently; rather, we determine whether a reasonable person could have found as the trial judge did. *Id.*

The Child Protection Act, RSA chapter 169-C (1994 & Supp. 2001), defines "neglected child" as one "[w]hose parents ... are unable to discharge their responsibilities to and for the child because of incarceration ...." RSA 169-C:3, XIX(c). Although the superior court cited this definition, its analysis focused almost exclusively on the caring, loving relationship between the father and son. The court did not consider any other responsibilities a parent owes a child or assess Richard's ability to fulfill these duties. This was error.

Parental responsibilities come in many forms, including providing for both the child's physical and emotional needs. *In re Thomas M.*, 141 N.H. 55, 58 (1996). Some duties may be discharged by delegation. *Id.* In *Thomas M.*, we upheld a neglect finding based upon an incarcerated father's failure to have any contact with his children during his confinement. *Id.* Here, we are asked whether contact alone is sufficient. We hold that it is not.

■ Given the specific facts of this case, including the length of Richard's incarceration, Adam's age at separation and upon his father's release, and the inability of family members or friends to take custody and care of the child, we conclude that Richard is unable to discharge his parental

responsibilities. Richard has been unable to provide for Adam's physical needs, including food, clothing, medical care or a domicile, since 1997, when Adam was thirteen months old. He will continue to be unable to do so until at least 2008, at which time Adam will be almost twelve years old. Because there are currently no family members able to take care of the child, Adam will likely remain in foster care during the period of his father's confinement.

Richard contends that he has done all that he could based upon his current circumstances. He argues that his communication with the child through letters, gifts, money and occasional visits demonstrates that he is an involved and attentive parent. There is no doubt as to his sincerity and emotional attachment to his son. However, under the statute, a finding of neglect is based upon the inability of the parent to discharge his or her responsibilities to and for the child. RSA 169-C:3, XIX(c). This includes more than providing emotional support. *See Matter of Appeal in Maricopa County*, 701 P.2d 1213, 1216 (Ariz. Ct. App. 1985). Although Richard's efforts to maintain contact with his child are commendable, the fact still remains that the child has been and will be without his father's care during most of his formative years as a result of his father's criminal behavior.

Our decision comports with the purpose of the Child Protection Act, which was enacted "to provide protection to children whose life, health or welfare is endangered." RSA 169-C:2, I (1994). To this end, the statute contemplates the placement in a foster home of a child who is neglected. *See In re Eva S.*, 121 N.H. 847, 851 (1981). Foster care, however, is meant only as a temporary placement until the child is either reunited with his or her family or adopted. *See* RSA 161:4, V (2002) (mandating that "[t]here shall be no more than 60 percent of the total number of children in the custody of the department living in foster care for more than 24 months"); RSA 169-C:24-a, I(a) (Supp. 2001) (requiring State to seek termination of parental rights when child has been in an out-of-home placement pursuant to neglect or abuse finding for twelve of the most recent twenty-two months).

Richard argues that DCYF's ultimate objective, to seek termination of his parental rights, may not be in Adam's best interests, may be unconstitutional, and probably will not be successful. Termination of parental rights is a separate analysis that is beyond the scope of our decision today.

Richard also contends that DCYF did not seek the least intrusive remedy, such as appointing a guardian for Adam pursuant to RSA chapter 463 (1992 & Supp. 2001) or identifying Adam as a child in need of services (CHINS) under RSA chapter 169-D (1994 & Supp. 2001). He further argues that DCYF and CASA failed to provide services that would foster

his relationship with Adam. These arguments were not raised below; thus, we will not entertain them on appeal. *See Johnson v. Wheeler*, 146 N.H. 594, 597 (2001).

Finally, Tanya B., Adam's mother, argues that Richard's due process rights were violated in the neglect proceeding brought against her. We do not address her arguments because she has no standing to assert any constitutional violation on Richard's behalf. *See Town of Nottingham v. Bonser*, 146 N.H. 418, 424 (2001).

*Reversed and remanded.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.