Concord District Court
No. 2005-426

## IN RE JUVENILE 2005-426

Argued: May 17, 2006
Opinion Issued: November 2, 2006

*Kelly A. Ayotte*, attorney general (*Elyse S. Alkalay*, assistant attorney general, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

*Goldman & LeBrun, P.A.*, of Concord (*John P. LeBrun* on the brief and orally), for the father, T.D.

*David N. Sandberg*, of Manchester, by memorandum of law, for the guardian ad litem, Court Appointed Special Advocates of New Hampshire, Inc.

DUGGAN, J. The father, T.D., appeals the order of the Concord District Court (*Carbon*, J.) that the permanency plan for his son be "another planned permanent living arrangement" (APPLA); namely, long-term care in the son's foster home. We affirm.

The following facts are contained in the record. On June 5, 2003, the New Hampshire Division for Children, Youth and Families (DCYF) filed a neglect petition in Concord District Court against the father. After an adjudicatory hearing, the court found that the father had neglected his son "by reason of ... incarceration" because on April 17, 2002, he began serving a two and one-half to eight year prison sentence. RSA 169-C:3, XIX(c) (2002). On July 29, 2003, the district court approved DCYF's

proposed dispositional order setting forth several requirements to be met by the father before reunification with his son could occur.

The district court held six review hearings between October 2003 and February 2005, during which time the father remained incarcerated. After each of the first five hearings, the district court found that the father had substantially complied with the dispositional order and reunification remained the permanency plan, with termination of parental rights/adoption identified as the concurrent plan in the event that reunification could not be achieved. In its order following the August 2, 2004 review hearing, the court approved an agreement between the father and DCYF granting the father a ninety-day extension from his then anticipated release date of October 27, 2004, to comply with the outstanding dispositional order. However, due to disciplinary violations, the father was denied parole and a new parole hearing was scheduled for January 2005.

In November 2004, the district court granted the father a second extension of ninety days from his newly anticipated release date in January 2005 to comply with the outstanding dispositional order. Again, the father's parole was postponed because of a disciplinary violation. In light of the second delay, the district court in its February 2005 review hearing order, indicated that in addition to termination of parental rights/adoption, APPLA would also be considered in the event that reunification could not be achieved.

A permanency hearing was held on May 9, 2005, five days after the father's release. On May 12, 2005, the district court ordered that the permanency plan be long-term care with his current foster home. On June 7, 2005, the district court denied the father's motion to reconsider and this appeal followed.

The father raises four issues on appeal. The four issues, however, can be distilled into one: whether the district court unsustainably exercised its discretion by failing to grant the father an extension to comply with the outstanding dispositional order and, instead, ordering APPLA with a foster family as his son's permanency plan.

APPLA does not appear in New Hampshire law. Rather, APPLA is one of four permanency options set forth by the federal Adoption and Safe Families Act of 1997 (ASFA), which provides the states with federal payments for foster care and adoption assistance. *See* 42 U.S.C. §§ 670, 675 (2000). Congress enacted ASFA, in part, "to speed critical decision-making for all children in foster care." Title IV-E Foster Care Eligibility Reviews and Child and Family Services State Plan Reviews, 65 Fed. Reg. 4029 (Jan. 25, 2000) (to be codified at 45 C.F.R. pts. 1355-57). Under ASFA, a

state will not receive federal funding until the state court makes "reasonable efforts to finalize a permanency plan" at a permanency hearing. 45 C.F.R. § 1356.21 (2001). The permanency hearing must occur within twelve months after the date the child has entered foster care, and at least once every twelve months thereafter during the continuation of foster care. 42 U.S.C. § 675(5)(C).

The federal statute also establishes a standard for placement in APPLA. 42 U.S.C. § 675(5)(C) provides in pertinent part:

> [P]rocedural safeguards will be applied . . . to assure each child in foster care under the supervision of the State of a permanency hearing . . . which hearing shall determine the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption and the State will file a petition for termination of parental rights, or referred for legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement . . . .

Thus, the first option is reunification with the parents. If reunification is not appropriate, then the second option is adoption and a petition for termination of parental rights. If neither option is appropriate, the court must next consider referral for legal guardianship. With respect to the fourth and least preferable option, APPLA, the court may order such a plan only in cases where the state agency has documented a compelling reason for determining that it would not be in the best interests of the child to order any of the other three permanency options. These standards and procedures are also contained in New Hampshire's "Protocols Relative to Abuse and Neglect Cases and Permanency Planning" established by the New Hampshire District Court's Court Improvement Project.

In this case, the district court's order found that APPLA was in the best interests of the son, but did not explicitly apply the standard above. However, the father does not argue on appeal that the district court failed to apply the proper standard. Nor does he argue that DCYF failed to document to the district court compelling reasons to demonstrate that neither reunification, adoption nor guardian appointment were in his son's best interests. Rather, the father argues that he should have been granted a third extension to comply with the dispositional order.

We will uphold the rulings and findings of the trial court unless they are unsupported by the evidence or tainted by error of law. *In re Adam M.*, 148 N.H. 83, 84 (2002). As the trier of fact, the trial court is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. *Id.* Consequently, our task is not to determine whether we would have found differently; rather, we determine whether a reasonable person could have found as the trial judge did. *Id.*

At the time of the permanency hearing, the district court found that the father was not in compliance with the outstanding dispositional order and that he was unable to demonstrate that he was able to provide a safe and stable environment for his son. The district court found that the father "had extensive time within which to demonstrate an ability and willingness to address the case plan . . . [and] [h]is request for yet another extension of time [was] due to his own inappropriate behavior . . . ." Finally, the district court noted that in the meantime, the son's foster placement was providing him with the stability and security that he needed and "[t]o disrupt this placement would be detrimental to [his] psychological well being . . . ." The record supports the district court's findings. At the permanency hearing, the father's counsel noted that the father had only recently been released from incarceration. In addition, he was living with his sister, had no job and was required to complete an alcohol awareness program before he could obtain his driver's license. The father's counsel further acknowledged that "he's got a lot of work to do just to stay out of prison and establish a life." In addition, the father testified that he "stayed in the prison nine extra months because of [his] behavior."

The district court also found that the son was "deeply vested" in his foster placement where he had been since July 17, 2004. Reports from both DCYF and the guardian ad litem (GAL) opined that he had adapted well to his foster family and was thriving in that placement. At the permanency hearing, DCYF stressed the importance of placing him in a stable and secure environment. Earlier GAL reports indicated that the foster placement provided such an environment. DCYF also noted that the son had not only expressed his desire to remain with his current foster parents, but that he actually feared removal from that placement. Finally, at the permanency hearing, the father himself recognized that his son was doing well in the foster home and stated that he wanted him to stay there at that time.

In light of the foregoing, we conclude that the district court did not err by denying the father a third extension and, therefore, we affirm the district court's order.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.