Belknap
No. 98-743

IN RE CRAIG T. AND MEGAN T.

December 30, 1999

*Homan & McEvoy, P.C.*, of Laconia (*Brian P. McEvoy* on the brief and orally), for the respondent, Joann T.

*Philip T. McLaughlin*, attorney general, (*Ann F. Larney*, senior assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. The respondent, Joann T., appeals the Superior Court's (*Smukler*, J.) denial of her motions to dismiss petitions alleging that she neglected her two children, Craig T. and Megan T. *See* RSA 169-C:3, XIX(b) (1994). She argues on appeal that the evidence was insufficient to support the findings of neglect. We affirm.

The petitioner, the New Hampshire Division for Children, Youth, and Families (DCYF), filed two neglect petitions in Laconia District Court against the respondent. The first petition alleged that she was present and failed to intervene when Todd T., who is her husband

and the children's father, was observed shaking and violently striking Craig, then age three. *See* RSA 169-C:3, XIX(b), :7 (1994). The second petition alleged that Megan is likely to suffer substantial harm in that her physical, mental, and emotional health will be impaired because she was present during the assault on Craig, and the respondent failed to protect her from witnessing the traumatic event. *See id.* In April 1998, the Laconia District Court found that Craig and Megan were "neglected" within the meaning of the statute. *See* RSA 169-C:3, XIX(b).

The respondent appealed to the superior court. *See* RSA 169-C:28 (1994 & Supp. 1999). At the end of the State's presentation of evidence at the two-day *de novo* hearing, *see* RSA 169-C:18 (1994 & Supp. 1999), the respondent moved to dismiss, arguing that the State had failed to present sufficient evidence of neglect to sustain either petition and that the State had failed to present sufficient evidence that either child suffered or would likely suffer harm. *See* RSA 169-C:3, XIX(b). The superior court denied these motions, concluding that the evidence supported findings that the respondent had neglected both children. Subsequently, the children were placed in foster care.

On appeal, the respondent contends that the State produced insufficient evidence to support a finding that either child was neglected. She argues that the evidence failed to establish any physical contact between the children and herself, or any suffering or impairment of the children. She argues that she did not participate in the assault on Craig and that her failure to intervene does not constitute neglect within the meaning of the statute.

We will uphold the rulings and findings of the trial court

> unless they are unsupported by the evidence or tainted by error of law. The court, which is the trier of fact, is in the best position to assess and weigh the evidence before it because it has the benefit of observing the parties and their witnesses. Consequently, our task is not to determine whether we would have found differently; rather, we determine whether a reasonable person could have found as the trial judge did.

*In re Tracy M.*, 137 N.H. 119, 125, 624 A.2d 963, 966 (1993) (citations and quotation omitted).

The following evidence was presented at the hearing. On December 15, 1997, Todd T., Craig, Megan, and the respondent were shopping at Radio Shack in the Belknap Mall in Belmont, when Craig began touching expensive items. As a result, Todd T. spanked

Craig while the respondent stood beside him with Megan. Todd T. then put Craig under his arm and walked through the mall towards the parking lot.

The trial court heard several accounts of what happened next. A mall employee who observed the assault testified that he heard a child scream "pretty loud" and saw Todd T. walk by his store, repeatedly striking Craig, who was under his arm, with "pretty hard hits" to the head, both open- and closed-handed. Describing the blows as making "a thumping noise," the employee recounted that Craig was "screaming pretty loud and holding the back of his head, . . . like trying to block the hits."

A mall security guard testified that he saw a man and a woman come around a corner in the mall and that the man had a boy under his arm. He described how the man took his free hand and "hit that baby right in the face," asserting that the man struck the boy once, with a closed fist, as he passed, and once more on the way to the parking lot. After witnessing the episode, the security guard went to the assistant manager's desk and requested that the police be called.

A registered nurse, who had been shopping at the mall, "heard someone yelling all the way across the parking lot." When she looked in that direction, she saw the family exit the mall and walk toward their car. She testified that the man put the child down, spanked him, and threw him into the back seat of the car. She further testified:

> [H]e kept yelling. He was yelling in his car. So I kept looking over. And a woman got in and got in the driver's side of the car, closed the door, and the next thing — and then he was still yelling and I looked over and he was turned around into the back seat and the whole car was moving and he had his arm up and it looked like he was hitting and shaking the child in the back seat right behind him and it didn't stop.

According to her testimony, she went over to the car, knocked on the window, and said, "[Y]ou stop that right now." The nurse was so shaken by what she saw that she, as well as two others who witnessed what occurred, went inside the mall and called the Belmont police.

The respondent's version of the events differed significantly from that of the three unrelated observers. She testified that Todd spanked Craig only "[o]nce on the butt." Craig responded with a temper tantrum, during which he typically "hits himself in the

head." Although she admitted that a woman in a hospital shirt came up to the car and said, "Stop," she countered that "it was not her business." Furthermore, although the respondent conceded that she was present with both Megan and Craig during the entire incident, she testified that she disagreed with "every word" of the witnesses' testimony.

RSA 169-C:3, XIX(b) defines a neglected child as one

> [w]ho is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, when it is established that his health has suffered or is very likely to suffer serious impairment; and the deprivation is not due primarily to the lack of financial means of the parents, guardian or custodian . . . .

*See also Petition of Jane Doe*, 132 N.H. 270, 277, 564 A.2d 433, 438 (1989). The record contains sufficient evidence to support the trial court's findings of neglect against both children under the statute.

■ That the respondent did not exercise "proper parental care or control" to provide for Craig's physical, mental, and emotional health, *see* RSA 169-C:3, XIX(b), is firmly supported by the evidence. Children are dependent on their parents for physical and emotional health and safety, and parents have a duty to protect their children from harm. Here, the respondent witnessed an episode of physical force directed upon her three-year-old son that horrified onlookers. The respondent, however, took no action whatsoever to protect Craig from repeated hits to the head by Todd T., and testified that what happened was no one else's business. Indeed, the respondent denied the assaults even occurred despite the fact that she witnessed them. The respondent's failure to acknowledge Craig's plight and involve herself on his behalf in such a violent situation raises grave concern for her ability then, and in the future, to protect Craig from other dangerous situations.

The State also presented evidence of the effect the assault had on Craig's mental and emotional health. A social worker testified that Craig, after being removed from the T. home, asked his foster mother if his foster father was going to hit him and told her that his other father used to hit him "all the time."

Nor can we say that the trial court erred in concluding that the respondent failed to exercise "proper parental care" over Megan, even though Megan was not herself the target of her father's anger. Megan, who was then only five years old, witnessed her father

unleash a barrage of blows against her younger brother, brought on by the simple curiosity of a three-year-old in an electronics store. Megan stood next to the respondent and in close proximity to where Craig was being hit. The respondent did nothing to protect Megan from witnessing the assault. Megan then followed her father and Craig out of the mall as the assault continued. In the parking lot, Megan was placed in the back seat of the car and viewed the continued assault on Craig. After witnessing the assault, several adult witnesses felt compelled to call the police and report the incident. Rather than shielding Megan from the scene, the respondent adopted the attitude that it never happened.

Witnessing Todd T. physically assault Craig while the respondent stood by and allowed it to continue would cause serious impairment to Megan's mental and emotional health. As stated above, children depend on their parents to protect them from emotional and psychological harm. Evidence of the respondent's lack of action and flat denial that the assault ever took place demonstrates the respondent's inability to perceive violence issues in her family and her unwillingness to protect Megan from emotional, psychological, and possibly physical harm. An affidavit filed by the DCYF social worker assigned to the case stated that DCYF fears that Megan is likely to suffer serious impairment to her physical, mental, and emotional health due, in part, to the respondent's inability to protect her.

■ To suggest, as the respondent does, that Megan could witness that conduct and not be harmed is irrational. We know of no requirement that a child must be the target of an assault to be seriously harmed by it. Moreover, the witnesses, much older than five-year-old Megan, testified that they were "horrified" by the incident, describing the assault as "something I would never like to see again" and "something that I hope I never have to see again." Thus, there was sufficient evidence that Megan is without the proper parental care for her physical, mental, and emotional health.

A reasonable person could find, as the trial court did, that both Craig and Megan were neglected as a result of the respondent's complicity. *See In re Tracy M.*, 137 N.H. at 125, 624 A.2d at 966. Accordingly, we conclude that the trial court properly determined that Craig and Megan were likely to suffer serious impairment to their physical, mental, and emotional health due, in part, to the respondent's inability to protect them. *See id.*

"Parental responsibilities come in many forms," some requiring the active involvement of the child's parent. *In re Thomas M.*, 141

N.H. 55, 58, 676 A.2d 113, 116 (1996). In this regard, the superior court stated:

> I did have some concerns coming into the hearing today with respect to [the respondent's] culpability . . . with respect to neglect. I could imagine a lot of reasons for it, with someone as volatile as apparently Mr. [T.] was, and — and some of which would be culpable on her part and some of which would not.
>
> . . . .
>
> But with respect to [the respondent], you know certainly if she had been intimidated, if something else had happened . . . I would be thinking about this. But I have to say, her — her testimony was not credible. And that leads me to think that she was complicitous in the conduct. It was not credible with one hit and a temper tantrum and all this . . . about him hitting himself on the head and nothing happening in the car.
>
> . . . .
>
> All of [the testimony], when there's just a flat denial on the part of [the respondent], I have to say it's not credible. I can't find her credible. I have to find her complicitous.

We share the trial court's concern over the respondent's failure to intervene to protect her children. In this case, the record is devoid of any evidence that the respondent was unable to intervene because she was fearful of the violent and volatile nature of Todd T. or because he had previously reacted violently when she tried to intervene. We recognize that "[a]lthough the law should not attempt to micromanage families, society does have a right to insist that children not be neglected. When neglect is due to a parent's unwillingness or reluctance to assume basic responsibilities, then society has a right to interfere to protect the innocent child." *In re Angel N.*, 141 N.H. 158, 164, 679 A.2d 1136, 1140 (1996). This is such a case.

*Affirmed.*

THAYER, J., sat but did not participate in the decision; the others concurred.