NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

4th Circuit Court-Laconia Family Division
No. 2021-0327

IN RE C.C.

Argued: December 14, 2021
Opinion Issued: January 25, 2022

John M. Formella, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the brief and orally), for the New Hampshire Division for Children, Youth and Families.

Friedman & Bresaw, PLLC, of Meredith (Jesse Friedman on the joint brief and orally), and Lothstein Guerriero, PLLC, of Concord (Kaylee Doty on the joint brief), for the respondent.

Walker & Varney P.C., of Wolfeboro (James P. Cowles on the joint brief), for the child's mother.

DONOVAN, J. The New Hampshire Division for Children, Youth and Families (DCYF) appeals an order of the Circuit Court (Carroll, R., approved by Garner, J.) dismissing a neglect petition brought against the respondent. See RSA 169-C:3, XIX(b) (Supp. 2021). On appeal, DCYF argues that the circuit court erred by: (1) relying upon criminal definitions of sexual assault and

grooming; and (2) disregarding conduct that the child did not personally observe. Further, DCYF argues that the evidence compelled a finding of neglect by the circuit court. We conclude that the circuit court committed legal error by basing its neglect determination, in part, upon whether the respondent's conduct was criminal. Accordingly, we vacate and remand. In addition, because the issue is likely to arise on remand, we also clarify that RSA chapter 169-C does not require that a child personally observe conduct in order for a court to consider that conduct when determining neglect.

## I. Facts

The following facts are undisputed or supported by the record. The respondent is the child's adoptive father. In January 2021, DCYF received two reports that, among other things, the respondent sexually abused the child's friend. At the time, the child was fifteen years old and her friend was sixteen years old. In response, a DCYF social worker investigated the reports and interviewed the child's family. Because the respondent was present at the initial interview, the parties did not discuss the sexual abuse allegations. Shortly thereafter, the child contacted the social worker and expressed her desire to speak further. In her next interview with the social worker, the child disclosed that the respondent made sexual advances towards and inappropriately touched her friend.

Thereafter, the Child Advocacy Center (CAC) separately interviewed the child and her friend. Each child detailed three separate incidents of alleged sexual abuse. During the first incident, the child sat on her bed, while the friend lay on the floor near the foot of the bed. The respondent entered the room, lay down next to the friend, and began to massage her back under her shirt. Eventually, the respondent slid his hands down her back and grabbed her buttocks. Although the child's position on the bed obstructed her view of the respondent's conduct, the friend texted the child about the respondent's touching as it occurred, asking her to intervene. The incident concluded when the friend left the room. During the second and third incidents, the respondent approached the friend in the child's home, professed his sexual attraction to her, and proceeded to kiss her body. The friend told the child about the second incident, and the third incident occurred while the child listened nearby.

When the child discussed the second incident with her friend, the child stated that what happened was "not okay" and that they should leave the house because the child could not "sleep here knowing that [he is] like that." Afterwards, to prevent further sexual advances by the respondent, the child attempted to remain with her friend when her friend was at her house. On one occasion, the child sat in between her friend and the respondent on the couch in order to prevent the respondent from touching her friend. The child also stated during her CAC interview that the respondent was "super touchy" towards her and had made her feel "uncomfortable" in the past. In light of his

2

recent actions, she felt it would be "difficult" and "awkward" if the respondent returned to the home. Further, both the child and her friend stated that the respondent's behavior stressed them out and led them to report the conduct to trusted adults.

In March 2021, DCYF filed a petition alleging that the respondent neglected the child pursuant to RSA 169-C:3, XIX(b), "by exposing her to the sexual abuse of one of [her] minor female friends, exposing her to the sexual grooming of one of [her] minor female friends, and sexually grooming the child." At the adjudicatory hearing, DCYF introduced the child's CAC interview, the friend's CAC interview, and the testimony of the social worker.

In May 2021, the court dismissed the neglect petition. In its written order, the court credited the veracity of both the child and her friend in their CAC interviews. It stated that the respondent's actions "exceeded personal boundaries of safe touching" and described his conduct as "reprehensible to our civilized values and moral consciences." Nonetheless, the court noted that DCYF alleged "exposure" of the child to sexual abuse and grooming and determined that the child did not personally observe any of the respondent's conduct. (Bolding omitted). The court further determined that the incidents alleged in the CAC interviews "were not sexual assaults" as defined by RSA chapter 632-A, nor did the respondent's conduct constitute "grooming" of the friend because it did not involve, based upon the criminal definition of grooming, "an under-age person." (Bolding omitted) (citing RSA 632-A:2-:3, applying criminal grooming to "a person . . . under 16 years of age"). Accordingly, the court concluded that DCYF did not satisfy its burden of proving that the respondent neglected the child. The court further concluded that DCYF presented "no evidence" that the child "suffered or is likely to suffer serious impairment." (Quoting RSA 169-C:3, XIX(b)). DCYF moved for reconsideration, which the circuit court denied. This appeal followed.

## II. Standard of Review

When reviewing final orders in abuse and neglect cases, we will uphold the findings and rulings of the circuit court unless they are unsupported by the evidence or tainted by error of law. In re Craig T., 144 N.H. 584, 585 (1999); see RSA 490-D:2, IV (2010) (granting the former family division jurisdiction over "[a]ctions under RSA 169-C, relating to abused and neglected children"); RSA 490-F:3 (Supp. 2021) (granting the circuit court jurisdiction that was previously conferred upon the former family division and probate courts). As the trier of fact, the circuit court is in the best position to assess and weigh the evidence before it. In re Craig T., 144 N.H. at 585. Thus, our task is not to determine whether we would have found differently, but, rather, whether a reasonable person could have found as the circuit court did. Id.

3

On appeal, DCYF argues that the circuit court erred as a matter of law by basing its neglect determination, in part, upon whether the respondent sexually assaulted or criminally groomed the child's friend.  We agree.  RSA 169-C:3, XIX(b) defines a "neglected child" as one "[w]ho is without proper parental care or control . . . necessary for the child's physical, mental, or emotional health, when it is established that the child's health has suffered or is likely to suffer serious impairment."  RSA 169-C:3, XIX(b).  Critically, "statutory neglect is not the actions taken or not taken by the parent or parents, but rather it is the likelihood of or actual serious impairment of the child's physical, emotional, and mental well[-]being."  In re J.H., 171 N.H. 40, 49 (2018) (quotation omitted); see also RSA 169-C:3, XXVII-a (Supp. 2021) ("Serious impairment means a substantial weakening or diminishment of a child's emotional, physical, or mental health or of a child's safety and general well-being." (quotation omitted)).

We conclude that, in dismissing the neglect petition, the circuit court relied, in part, upon its findings that the respondent's conduct did not satisfy the criminal definitions of "grooming" and "sexual assault."  See State v. Surrell, 171 N.H. 82, 88 (2018) ("The interpretation of a trial court order presents a question of law for us to decide.").  By doing so, the court misconstrued the standard of neglect set forth in RSA 169-C:3, XIX(b).  Nothing in the plain language of RSA 169-C:3, XIX(b) requires DCYF to prove that the parent's conduct was criminal.  Rather, the relevant inquiry is whether the parent has deprived the child of proper parental care or control and whether, as a result, the child has suffered, or is likely to suffer, serious impairment.  See RSA 169-C:3, XIX(b); see also In re J.H., 171 N.H. at 49.  Contrary to the circuit court's reasoning, whether the respondent's conduct was criminal is not determinative of whether he failed to provide "proper parental care or control" to the child, as required by RSA 169-C:3, XIX(b).  Accordingly, the circuit court erred as a matter of law by relying, in part, upon the criminal definitions of sexual assault and grooming when determining whether DCYF presented sufficient evidence to establish a finding of neglect.  We therefore vacate the circuit court's decision and remand for further proceedings consistent with this opinion.

DCYF also argues that the circuit court erred as a matter of law by disregarding the respondent's conduct that the child did not personally observe.  The respondent counters that the circuit court did consider the respondent's conduct and determined that the child's "second-hand exposure" did not meet the statute's requirement of "serious impairment."  See RSA 169-C:3, XIX(b).  Because it is likely to arise on remand, see State v. Williams, 173 N.H. 540, 543 (2020), we address this issue only to clarify that, based upon the Child Protection Act and our case law interpreting that statute, no bright-line rule exists requiring that a child must personally observe conduct for a court to

consider that conduct when determining neglect.  See RSA 169-C:3, XIX(b). Here, although the child did not personally observe the respondent's conduct, she was a percipient witness to that conduct in that she heard the respondent make sexual advances toward the friend.  The friend also informed the child of the respondent's kisses and inappropriate touching.  On remand, rather than disregarding this evidence, the circuit court should consider whether the child's exposure to, and knowledge of, the respondent's conduct has caused, or is likely to cause, the child to suffer serious impairment.  In light of our holding, we decline to address DCYF's remaining argument.

Vacated and remanded.


MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.