Hillsborough-southern judicial district
No. 2002-433

IN THE MATTER OF DOUGLAS HOYT NELSON AND SYLVIA HORSLEY

Argued: January 15, 2003
Opinion Issued: June 6, 2003

*Devine, Millimet & Branch, P.A.,* of Manchester (*David S. Phillips* and *Donald L. Smith* on the brief, and *Mr. Phillips* orally), for the petitioner, Douglas Hoyt Nelson.

*Wiggin & Nourie, P.A.,* of Manchester (*L. Jonathan Ross* and *Carol L. Kunz* on the brief, and *Ms. Kunz* orally), for the respondent, Sylvia Horsley.

DALIANIS, J. This case comes before us on an interlocutory transfer without ruling from the Superior Court (*Hampsey*, J.). *See* SUP. CT. R. 9.

The record contains the following facts. The petitioner, Douglas Hoyt Nelson, and the respondent, Sylvia Horsley, began dating in 1992. They have one biological child, Nelson James Robert Horsley, born on June 29, 1993. The parties never married each other.

The parties ended their romantic relationship in November 1994. In December 1994, the respondent adopted a son, Kent Horsley. In December 1995, the parties' romantic relationship resumed, and the petitioner moved in with the respondent. On September 30, 2000, the respondent adopted two children from Ukraine, Emma Horsley and Molly Horsley.

Contrary to the petitioner's assertions, the respondent contends that she assumed all child care duties and was the sole financial support for the children until 1998, at which time the petitioner shared some of the child care responsibilities and allegedly provided minimal financial support for the children. The petitioner refused the respondent's repeated requests that he adopt Kent. In addition, the respondent asserts that although the petitioner traveled to Ukraine to meet Emma and Molly, he stated unequivocally that he would not adopt them.

In July 2001, the respondent asked the petitioner to move out of her residence. He did so in September of that year. Although the petitioner was at first allowed to visit with Kent, the respondent soon terminated the visitation after Kent began to exhibit what the respondent describes as increasing fear and anxiety over his visits with the petitioner.

In October, the petitioner filed a petition for custody and support of the parties' biological child, which he later amended to seek custody and support orders with respect to the respondent's adopted children.

The trial court transferred the following questions for interlocutory appeal:

A. Whether the Superior Court has subject matter jurisdiction to grant an unrelated third party custodial rights to minor children he has not adopted by virtue of the in loco parentis and psychological parent doctrines.

B. Whether An Order Granting Custodial Rights To An Unrelated Third Party Over the Express Objection of the Minor Children's Sole Parent Violates the Parent's Rights Under the State and Federal Constitutions. N.H. CONST. Pt. I Art. 2; U.S. CONST[.] Amend. Xiv.

We begin with the second transferred question.

We address the defendant's State Constitutional claim first, citing federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). We have recognized that

> [t]he family and the rights of parents over it are natural, essential, and inherent rights within the meaning of the New Hampshire Constitution. Because of their fundamental importance, great judicial deference has been accorded parental rights. They have been found to operate against the State, against third parties, and against the child.

*Roberts v. Ward*, 126 N.H. 388, 391 (1985) (citations, quotation and ellipses omitted). We have long recognized the right to raise and care for one's children as a fundamental liberty interest protected by Part I, Article 2 of the State Constitution, *Petition of Kerry D.*, 144 N.H. 146, 149 (1999), and have extended such protection to both natural and adoptive parents. *Cf. In re Bill F.*, 145 N.H. 267, 276 (2000). Similarly, United States Supreme Court precedent recognizes "that the Due Process Clause of the Fourteenth Amendment [to the Federal Constitution] protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion).

As we have explained in the past, the best interests of the child guide all custody matters. *Bodwell v. Brooks*, 141 N.H. 508, 512 (1996). There is a presumption, however, that "fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 68 (plurality opinion). "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69 (plurality opinion). This judicial reluctance to interfere with parental prerogatives

derives, historically, from the notion that parents have a natural entitlement to the exclusive companionship, care, custody, and management of their children. *Preston v. Mercieri*, 133 N.H. 36, 40 (1990). In the context of a divorce, however, the superior court may interfere with parental rights to determine a child's best interests as between two fit parents. *See* RSA 458:17 (Supp. 2002).

The State does have "a competing interest in the welfare of children within its jurisdiction, and may, as *parens patriae*, intervene in the family milieu if a child's welfare is at stake." *Preston*, 133 N.H. at 40. We have noted that "parental rights are not absolute, but are subordinate to the State's *parens patriae* power, and must yield to the welfare of the child." *Id.* Citing *Preston*, the petitioner argues that he is entitled to custody of the respondent's adopted children, over her objection, so long as it is in the children's best interests. *Preston*, however, is not instructive because it dealt with the subject of visitation, an act we have said constitutes a "far lesser intrusion, or assertion of control, than ... an award of custody and [which is] thus not nearly as invasive of parents' rights." *Roberts*, 126 N.H. at 393 (quotation omitted). Moreover, application of the best interests of the child standard in a custody dispute between a natural or adoptive parent and a nonparent would offend due process if the parent's conduct towards the child has not been inconsistent with the parent's constitutionally protected status. *See Price v. Howard*, 484 S.E.2d 528, 534 (N.C. 1997).

█ The constitutional rights of the natural or adoptive parent over his or her children are not easily set aside. Only in the most unusual and serious of cases may such fundamental rights be abrogated in favor of an unrelated third person. In fact, in *In re Samantha L.*, 145 N.H. 408 (2000), we noted that "a natural or adoptive parent who has not been found to have abused or neglected his or her child may not be deprived of custody of the child" unless it is proven that the parent is unfit to exercise custody of the child. *Id.* at 414 (quotation omitted). The right of parents to raise their children without interference is a fundamental liberty interest deserving of the highest level of protection. *See Preston*, 133 N.H. at 40.

The petitioner argues, however, that the status of parent should be extended to cover all persons who have established a parental relationship with a child through the *in loco parentis* or psychological parent doctrines, affording them the same constitutional protections. We disagree.

The common law defines a person *in loco parentis* as "one who intentionally accepts the rights and duties of natural parenthood with respect to a child not his own." *In re Diana P.*, 120 N.H. 791, 795 (1980), *cert. denied*, 452 U.S. 964 (1981), *overruled on other grounds by In re*

*Craig T.*, 147 N.H. 739, 744-45 (2002); *see also In re Shelby R.*, 148 N.H. 237, 242 (2002) (stepparents who demonstrate a full commitment to raising and caring for their stepchildren are generally charged with the rights and duties attributed to natural parents). For example, we have held that a couple who stood *in loco parentis* to a child were "persons ... legally aggrieved," *Durivage v. Vincent*, 102 N.H. 481, 486 (1960) (quotation omitted), by a probate court's denial of their petition for continued custody of the child and that the *in loco parentis* relationship "gave rise to personal rights which entitled them to appeal from the dismissal of their petition," *id.* We have also stated that a plaintiff standing *in loco parentis* was permitted to maintain an action for damages for personal injury suffered by a minor child, and that such a person was "entitled to all the rights of a parent" while the relationship existed. *Whitaker v. Warren*, 60 N.H. 20, 26 (1880). Finally, in *Bodwell* we held that a stepfather's role as an *in loco parentis* stepparent entitled him to assert legal rights as an intervenor in a child custody proceeding. *Bodwell*, 141 N.H. at 513. Nevertheless, we have never expressly held that an unrelated third person standing *in loco parentis* has the same constitutionally protected rights to custody as a natural or adoptive parent, nor are we persuaded to do so here. To do so could elevate the rights of any unrelated third person who has spent considerable time caring for a child over the fundamental liberty interests of natural or adoptive parents.

Because we find the *in loco parentis* and psychological parent doctrines substantially similar, we will not conduct a separate analysis under the psychological parent doctrine.

▇ Accordingly, we answer the second transferred question, to the extent it addresses the State Constitution, in the affirmative, and hold that it would violate the fit natural or adoptive parent's State constitutional rights to grant custodial rights to an unrelated third person over the express objection of that parent. We note, however, that this decision does not affect stepparents, who under certain circumstances have been recognized as having the right to seek custody if it is in the best interests of the child. *See Bodwell*, 141 N.H. at 514.

Given our answer above, we need not address either the second transferred question to the extent that it raises issues under the Federal Constitution, or the first transferred question.

*Remanded.*

BROCK, C.J., and BRODERICK and DUGGAN, JJ., concurred; NADEAU, J., dissented.

NADEAU, J. dissenting. Because I believe that the superior court can, under certain circumstances, grant custodial rights to an unrelated third party over the minor children's sole natural or adoptive parent's objection, I respectfully dissent.

The majority contends that "[o]nly in the most unusual and serious of cases may [the] fundamental rights [of natural or adoptive parents over their children] be abrogated in favor of an unrelated third person." I believe this is contrary to the tenor of our case law.

First, this case surely involves custody issues more like those in divorce proceedings than in the abuse and neglect cases cited by the majority. In both situations, the court's task is to balance the State's right to act in the best interest of the child against the natural or adoptive parent's right to raise the child without interference by the State. *See In re Bill F.*, 145 N.H. 267, 275 (2000); *Stanley D. v. Deborah D.*, 124 N.H. 138, 142 (1983). The determination of whether a parent not implicated in the abuse or neglect of his child can be deprived of custody in an abuse and neglect proceeding in the absence of proof by the State that the parent is unfit to exercise custody of the child, as presented by *In re Bill F.*, presents different competing interests than the inquiry into whether custodial rights over a child should be awarded, against the wishes of the child's natural or adoptive parent, to a person who has stood *in loco parentis* to the child and with whom the child has developed strong emotional bonds.

A child who has not been abused or neglected by his natural or adoptive parent has little interest in having custody awarded to the division for children, youth and families, whereas a child in a family dissolution situation may well have an interest in preserving ties to an unrelated third party with whom the child has developed and maintained a parent-like relationship, even if the child's otherwise fit natural or adoptive parent objects to continuation of that relationship.

In the family dissolution situation, we have not required a showing of unfitness of the natural parent before custody could be granted to another. Thus, in affirming an award of physical custody to a stepfather rather than the natural mother in *Stanley D.*, 124 N.H. at 142-43, we stated:

> While recognizing the importance of day-to-day custody in the spectrum of parental rights, we do not find that the denial of an award of physical custody is equivalent to the termination of parental rights, thereby requiring proof of the natural parent's unfitness or other extraordinary circumstances. We hold that, upon a finding that the best interests of the child require that the natural mother be denied physical custody, the court has the power to award physical custody to the stepfather.

Having distinguished its opinion in this case from situations involving stepparents, the majority would presumably find *Stanley D.* inapposite. Such a distinction, however, does not withstand scrutiny under the majority's own logical framework. The majority, citing *Bodwell v. Brooks*, 141 N.H. 508, 514 (1996), acknowledges that stepparents "under certain circumstances have been recognized as having the right to seek custody if it is in the best interests of the child." The majority offers no rationale, however, for distinguishing stepparents from other nonbiologically related third parties.

The distinction cannot be based upon constitutional rights of the stepparent, as we have never recognized in stepparents the same fundamental interest in the care and custody of their stepchildren as natural or adoptive parents have in their children. *Cf. In re Shelby R.*, 148 N.H. 237, 242 (2002); *id.* at 245 (Duggan, J., concurring in part and dissenting in part). Nor does the majority appear to contend that marriage to the natural parent, regardless of its duration or the attendant relationship (or lack thereof) between stepparent and stepchildren, automatically places a stepparent into the category of persons having a right to petition for custody of the children. Rather, the majority asserts that "under certain circumstances" stepparents have the right to seek custody of their stepchildren.

Examination of our case law reveals that the "circumstances" that justify the award of custody to a stepparent are not marriage to the natural parent, but the existence of a "psychological parent-child relationship," *Stanley D.*, 124 N.H. at 141, or an *"in loco parentis"* relationship, *Bodwell*, 141 N.H. at 513 — exactly the kind of relationship the petitioner here asserts. Thus, there is no logical basis in our case law for distinguishing between stepparents and unrelated third parties asserting an *in loco parentis* relationship with the children over whom they seek custody. Justice Duggan recognized as much in a different context when he stated: "Indeed, if an emotional attachment is determinative, there is no principled basis for distinguishing stepparents from grandparents, siblings and other live-in relatives." *In re Shelby R.*, 148 N.H. at 245 (Duggan, J., concurring in part and dissenting in part).

In addition, by focusing on the *in loco parentis* petitioner's lack of a constitutionally protected interest, the majority loses sight of the primary interest at stake; namely, the child's interest in preserving the relationship. Thus, we noted in *Roberts v. Ward*, 126 N.H. 388 (1985), that in determining whether to grant grandparental visitation, a court "recognizes that it is primarily the right of the child to know her grandparents which is being protected and not the interests of the grandparents." *Id.* at 393 (quotation and ellipsis omitted). The same

rationale of protecting the child's interest rather than the right of the person seeking custody also led us to note in *Preston v. Mercieri*, 133 N.H. 36, 42 (1990), that "in New Hampshire the justification for granting visitation does not depend upon notions of bloodlines or kinship."

The majority seeks to distinguish *Preston* because it dealt with visitation, which is a lesser invasion of parental rights than an award of custody. *See Roberts*, 126 N.H. at 393. It bears noting, however, that the second transferred question asks about the constitutionality of granting "custodial rights," which include visitation rights. *See Stanley D.*, 124 N.H. at 142. Thus, it might be argued that the majority's holding precludes even the lesser intrusion of granting visitation rights to an *in loco parentis* petitioner. Given that custody awards can span a continuum from minimal visitation to joint physical and/or legal custody to sole physical and legal custody, the level of intrusion upon the natural or adoptive parent's rights should be a factor in the balancing of the interests involved.

Rejection of the majority's categorical approach, then, requires consideration of whether an *in loco parentis* petitioner can, without violating the State or Federal Constitutions, ever be granted custodial rights over the objection of the children's sole natural or adoptive parent.

Let me start by making clear what I consider to be an *in loco parentis* relationship for these purposes. Under the common law, "a person *in loco parentis* is one who intentionally accepts the rights and duties of natural parenthood with respect to a child not his own." *In re Diana P.*, 120 N.H. 791, 794-95 (1980), *cert. denied*, 452 U.S. 964 (1981), *overruled on other grounds by In re Craig T.*, 147 N.H. 739, 744-45 (2002). We have noted that whether an *in loco parentis* relationship exists "depends upon a consideration of all the facts." *In re Diana P.*, 120 N.H. at 795. Although we have noted some factors that bear on the determination, *see id.*, we have not developed a test to focus the inquiry. I believe, however, that in the context of child custody or visitation petitions, a specific test is necessary to protect the natural or adoptive parent's constitutionally protected interest in the custody of his or her child. *See Ellsworth v. Heath*, 140 N.H. 833, 837 (1996); *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion).

The test set forth by the Supreme Court of Wisconsin in *In re Custody of H.S.H.-K.*, 533 N.W.2d 419, 421 (Wis.), *cert. denied*, 516 U.S. 975 (1995), is sufficiently specific and comprehensive to protect the interests of both children and natural or adoptive parents. *See id.* at 436. Accordingly, I would adopt the following Wisconsin test:

> To demonstrate the existence of the petitioner's parent-like relationship with the child, the petitioner must prove four

elements: (1) that the biological or adoptive parent consented to, and fostered, the petitioner's formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, [although the contribution need not be monetary,] without expectation of financial compensation; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.

*Id.* at 421 (footnote omitted).

I would also require proof of "a significant triggering event [which] justifies state intervention in the child's relationship with a biological or adoptive parent." *Id.* In a divorce situation, the triggering event is the dissolution of the relationship. When, as in this case, the parties are not married and the petitioner has not adopted the child, the triggering event occurs when the natural or adoptive parent engages in conduct that the petitioner reasonably believes will significantly impair his or her relationship with the child. *Cf. id.*

Of course, proof of an *in loco parentis* relationship and a triggering event merely allows the superior court to adjudicate the custody or visitation request; the court must still decide whether to grant custody or visitation to the *in loco parentis* petitioner. "[W]e have made the best interests of the child the beacon by which to guide all custody matters." *Roberts*, 126 N.H. at 392.

Accordingly, once an *in loco parentis* relationship as defined above has been established and a triggering event has occurred, the superior court must then determine whether it would be in the best interests of the child to grant the *in loco parentis* petitioner custody or visitation. *Cf. id.* (visitation with grandparents); *Bodwell*, 141 N.H. at 514 (custody to stepfather). I would require, however, that an *in loco parentis* petitioner seeking custodial or visitation rights contrary to the wishes of the natural or adoptive parent bear the burden of proving that such custody or visitation is in the best interests of the child because "there is a presumption that fit parents act in the best interests of their children," *Troxel*, 530 U.S. at 68.

The Wisconsin test would address the respondent's contention that an award of custodial rights to an unrelated third party over a parent's objection would violate the parent's right, as recognized in *Troxel*, to

"restrict [his or her] children's exposure to third parties." In *Troxel*, grandparents sought expanded visitation rights with their grandchildren. *Troxel*, 530 U.S. at 60-61. The Washington statute under which they sought visitation provided that "[t]he court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." *Id*. at 61 (quotation omitted). A plurality of the United States Supreme Court found this statute "breathtakingly broad," *id*. at 67, and held that granting visitation to the grandparents over the mother's protests "was an unconstitutional infringement on [the mother's] fundamental right to make decisions concerning the care, custody, and control of her two daughters." *Id*. at 72.

Unlike the statute at issue in *Troxel*, the Wisconsin test is narrowly tailored to protect the natural or adoptive parent's constitutional rights. While the Washington statute "place[d] no limits on either the persons who may petition for visitation or the circumstances in which such a petition may be granted," *id*. at 73, the Wisconsin test limits petitioners to those who allege an *in loco parentis* relationship with the child, which, among other elements, must include that the petitioner and the child lived together in the same household, and requires a triggering event before the court can intervene in the relationship between the child and the natural or adoptive parent.

Such a test similarly answers the respondent's argument that "the 'best interest' standard standing alone cannot nullify Respondent's fundamental right to parent her children as she deems appropriate." First, I would not apply the best interests standard standing alone. I would focus upon the parent-like relationship between the petitioner and the child and only after finding that it meets the test, determine whether custody or visitation would be in the best interests of the child.

In addition, these procedures address the *Troxel* plurality's admonition that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Troxel*, 530 U.S. at 70. By imposing upon the *in loco parentis* petitioner the burden to prove that the custodial or visitation rights he or she seeks are in the best interests of the child, presumptive validity is accorded to the natural or adoptive parent's determination of the child's best interests.

The respondent also argues that the petitioner's relationship with her children is even more tenuous than that of the grandparents in *Troxel*. I disagree. Once a petitioner meets the Wisconsin test, his or her relationship with the child can hardly be called tenuous. In fact, a solid *in*

*loco parentis* relationship may well be stronger than a relationship between a child and grandparents.

The test I would adopt also assures that an *in loco parentis* petitioner will not be able to assert parental rights lightly. It is not possible for the next-door neighbor or the casual romantic partner to meet all the conditions of the test including that the natural or adoptive parent "consent to and foster" the *in loco parentis* relationship. *See V.C. v. M.J.B.*, 748 A.2d 539, 551-52 (N.J.), *cert. denied*, 531 U.S. 926 (2000).

> The requirement of cooperation by the legal parent is critical because it places control within his or her hands. That parent has the absolute ability to maintain a zone of autonomous privacy for herself and her child. However, if she wishes to maintain that zone of privacy she cannot invite a third party to function as a parent to her child and cannot cede over to that third party parental authority the exercise of which may create a profound bond with the child.

*Id.* at 552. A natural or adoptive parent who voluntarily consents to the formation of a relationship between the petitioner and the child is hardly in a position to complain if the natural bounty of that relationship is accorded the child or the petitioner.

Because I would hold that a petitioner who meets the test I propose could, under certain circumstances, be awarded custodial rights over the objection of the minor children's sole natural or adoptive parent without violating the State or Federal Constitutions, I would answer the second transferred question in the negative. Accordingly, unlike the majority, I would reach the first transferred question.

The respondent contends that the superior court lacks jurisdiction because "[a]bsent divorce proceedings, ... the superior court has no jurisdiction to appoint a custodian of a minor. The right of custody is a legal incident of guardianship, and the appointment of guardians is a matter within the exclusive jurisdiction of the probate court." *McLaughlin v. Mullin*, 139 N.H. 262, 265 (1994) (quotation and brackets omitted). The petitioner argues that appointment of a guardian is unnecessary because he stands *in loco parentis* to the respondent's adopted children. He therefore contends that the superior court, being the court of general jurisdiction, has the power to adjudicate this case.

The petitioner analogizes this case to *Ellsworth*, 140 N.H. at 834-35, in which we held that the superior court, rather than the probate court, has subject matter jurisdiction over custody disputes between unwed parents because appointment of a guardian is unnecessary since, by statute, parents are automatically the joint guardians of their minor children. *See*

*id.* at 835; RSA 463:3 (Supp. 2002); *see also Brauch v. Shaw*, 121 N.H. 562, 569 (1981).

I agree with the petitioner that appointment of a guardian is unnecessary when a person seeking custodial rights claims an *in loco parentis* relationship. This relationship, however, does not impute statutory rights under RSA 463:3 to a person *in loco parentis. Cf. Ellsworth*, 140 N.H. at 835. Nor do I interpret RSA 463:2, VI (Supp. 2002), which defines parent, in pertinent part, to mean "mother, father, or adoptive parent," as including a person *in loco parentis.* Rather, I would simply recognize that a guardianship proceeding in probate court, which would give the appointed guardian "the powers and responsibilities of a parent regarding the minor's support, care and education," RSA 463:12, I (Supp. 2002), would be superfluous in the case of a person *in loco parentis,* who, by definition, has already voluntarily assumed the "rights and duties of natural parenthood," *In re Diana P.*, 120 N.H. at 795.

Because I believe that a guardianship proceeding is unnecessary, I would conclude that the probate court lacks jurisdiction. As we recognized in *Ellsworth*, 140 N.H. at 834-35, "[t]he power of probate courts is limited to the power conferred upon them by statute," and no statute "confers jurisdiction upon the probate court to award custody absent an appointment of a guardian."

The petitioner asserts that the superior court has jurisdiction for two reasons. First, he asserts that this case deals with a constitutional issue. In *Brauch*, 121 N.H. at 570, and *Ellsworth*, 140 N.H. at 836, we noted the absence of specific statutory authority to award custody as between unwed natural parents, but recognized that "'the protection of a constitutional right is not dependent upon legislative enactment or grant of authority to the judiciary.'" *Ellsworth*, 140 N.H. at 837 (quoting *Brauch*, 121 N.H. at 570). Accordingly, we held that "since the right of a parent to the custody of his or her child is protected by our State Constitution, N.H. CONST. pt. I, art. 2, the superior court as the court of general jurisdiction has subject matter jurisdiction to determine custody issues between unwed parents." *Id.*

The petitioner asserts that persons *in loco parentis* also possess a constitutional right to the custody of the children with whom they have that relationship. I believe it is unnecessary to address that contention at this time, and thus, contrary to the majority's apprehension, I would not hold here that persons *in loco parentis* are entitled to the same constitutional protections as natural or adoptive parents. Rather, I would look to the superior court's equitable jurisdiction under RSA 491:7 (1997) and RSA 498:1 (1997).

The opinion has been expressed, and reiterated many times in our cases, that "the Superior Court is considered to have no independent equity jurisdiction over the custody and support of children," *Trow v. Trow*, 95 N.H. 529, 529 (1949). As suggested by distinctions drawn in *Roberts*, 126 N.H. at 390-91, and *Ellsworth*, 140 N.H. at 836-37, however, such statements are broader than the actual holdings on which they are based.

In *Leclerc v. Leclerc*, 85 N.H. 121, 121 (1931), for instance, the petitioner sought to obtain custody of her deceased brother's children by bringing forward the divorce proceedings between her brother and the children's mother and modifying the custody order made therein. After noting that "divorce proceedings abate upon the death of either of the parties," *id.* at 122, we held:

> The provisions of [what is now RSA 491:7], that the superior court shall take cognizance "of petitions for divorce, nullity of marriage, alimony, custody of children and allowance to wife from husband's property for support of herself and children" merely impose upon the superior court the duty of administering the divorce statutes and confer upon it no independent jurisdiction over the custody of children.

*Id.* at 123. Thus, *Leclerc* considered only a portion of the jurisdiction statutorily conferred upon the superior court, yet went on to state broadly that "[i]n the absence of pending or possible divorce proceedings," the superior court lacked jurisdiction to appoint a custodian of minors. *Id.* (citations omitted). *Leclerc* then explained that "the right of custody is a legal incident of guardianship, and the appointment of guardians is a matter within the exclusive jurisdiction of the probate court." *Id.*

*Leclerc*'s holding can be limited, then, to situations in which there are no divorce proceedings and, given the petitioner's lack of parental relationship to the child, a guardianship proceeding is necessary. *See, e.g.*, *Leclerc*, 85 N.H. at 121; *McLaughlin*, 139 N.H. at 263 (petition by maternal grandparents). Where guardianship issues have not been present, however, we have noted that the superior court's jurisdiction is broader than this line of cases would suggest. *See Ellsworth*, 140 N.H. at 837.

RSA 491:7 provides, in part, that "[t]he superior court shall take cognizance ... of suits in equity under RSA 498:1." RSA 498:1, in turn, provides:

> The superior court shall have the powers of a court of equity in ... [certain specified cases] and in all other cases cognizable in a court of equity, except that the court of probate shall have

exclusive jurisdiction over equitable matters arising under its subject matter jurisdiction authority in RSA 547, RSA 547-C and RSA 552:7.

Because I believe that the probate court lacks jurisdiction in this case, I would conclude that the superior court has equitable jurisdiction under this section.

In *Roberts*, 126 N.H. at 391-92, we recognized the equitable power of the superior court to adjudicate a request for grandparents' visitation outside the divorce context provided for by statute at that time, *see* RSA 458:17, VI (1983) (amended 1989, 1991); *see also* RSA 458:17-d (Supp. 2002) (enacted subsequent to *Roberts*). In determining that the superior court had jurisdiction, we stated:

> One of the frequent consequences, for children, of the decline of the traditional nuclear family is the formation of close personal attachments between them and adults outside of their immediate families. Stepparents, foster parents, grandparents and other caretakers often form close bonds and, in effect, become psychological parents to children whose nuclear families are not intact.
>
> It would be shortsighted indeed, for this court not to recognize the realities and complexities of modern family life, by holding today that a child has no rights, over the objection of a parent, to maintain a close extra-parental relationship which has formed in the absence of a nuclear family. . . .
>
> Further, it would be incongruous to deny courts the ability even to consider the effects upon children of denial of visitation rights under these circumstances, when we have made the best interests of the child the beacon by which to guide all custody matters. Rather, the better view is that the superior court, as an instrumentality of the State, may use its *parens patriae* power to decide whether the welfare of the child warrants court-ordered visitation with grandparents to whom close personal attachments have been made.

*Roberts*, 126 N.H. at 392 (citations omitted). For similar reasons, I conclude that the superior court has equitable jurisdiction to adjudicate a claim for custody by a person alleging an *in loco parentis* relationship with a child. *Cf. E.N.O. v. L.M.M.*, 711 N.E.2d 886, 889-90 (Mass.) (finding general equitable jurisdiction in probate court to award visitation to one in parent-like relationship with child), *cert. denied*, 528 U.S. 1005 (1999); *In re Custody of H.S.H.-K.*, 533 N.W.2d at 435 (equitable jurisdiction in

circuit court). Accordingly, I would answer the first transferred question in the affirmative.

In sum, the two adults in this case have their own reasons for not being married. That fact alone, however, should not prohibit the petitioner from seeking custodial rights based upon the children's best interests. A petitioner who meets the Wisconsin test should not be deprived of the opportunity to obtain custody of or visitation with the child merely because he was not married to the natural parent during the time the relationship was created. The natural parent is protected because the facts necessary to meet the Wisconsin test are subject to evidentiary proof and determination by the superior court.

Obviously, the trial court, in making a determination whether custodial rights should be accorded the petitioner, will consider the constitutional rights of the natural parent, but should also be able to take into account the nature of the parental relationships and the interest of the child.

Accordingly, I would answer the first transferred question in the affirmative and the second transferred question in the negative and remand to the superior court for further proceedings. By denying the petitioner the opportunity to present evidence to the superior court that he has met the Wisconsin test and established a parental relationship with the child, merely because he does not share blood with the child or a marriage certificate with the mother, the majority opinion ignores the realities of the twenty-first century.

For these reasons, respectfully, I dissent.