NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2022-0537
Citation: Doe v. Manchester Sch. Dist., 2024 N.H. 48


JANE DOE

v.

MANCHESTER SCHOOL DISTRICT & a.

Argued: April 27, 2023
Opinion Issued: August 30, 2024

Lehmann Major List, PLLC, of Concord (Richard J. Lehmann on the brief and orally), for the plaintiff.

Drummond Woodsum & MacMahon, of Manchester (Demetrio F. Aspiras, III, Meghan S. Glynn, and James A. O'Shaughnessy on the brief, and Meghan S. Glynn orally), for the defendants.

GLBTQ Legal Advocates & Defenders, of Boston, Massachusetts (Chris Erchull and Mary Bonauto on the brief), and American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief), for GLBTQ Legal Advocates & Defenders, American

Civil Liberties Union of New Hampshire Foundation, American Medical Association, Heather Romeri, Nico Romeri, Andres Mejia, Rachel Blansett, Quinci Worthey, New Hampshire Medical Society, New Hampshire Academy of Family Physicians, New Hampshire Pediatric Society, New Hampshire Psychiatric Society, Unitarian Universalist Action New Hampshire, New Hampshire Council of Churches, Jason Wells, Kali Fyre, Marjorie Gerbracht, Sarah Rockwell, Bob Stewart, Elsa Worth, Jay MacLeod, GLSEN, Inc., GLSEN New Hampshire, YWCA New Hampshire, Seacoast Outright, and 603 Equality, as amici curiae.

MACDONALD, C.J.

[¶1] The plaintiff, Jane Doe, appeals a decision of the Superior Court (Messer, J.) dismissing her claims against the defendants, Manchester School District (the District) and School Administrative Unit #37, challenging the District's transgender student policy.  We affirm.

I. Background

[¶2] The plaintiff's complaint alleges the following facts.  On February 8, 2021, the defendants adopted a policy titled "Transgender and Gender Non-Conforming Students." (Bolding omitted.)  They amended that policy on March 14, 2022.  As amended, the policy provides, in relevant part, as follows (additions to the original language are shown in bold; deletions are indicated by strikethrough):

> The Board recognizes a student's right to keep private one's transgender status or gender nonconforming presentation at school.  Information about a student's transgender status, legal name, or gender assigned at birth also may constitute confidential information.  School personnel should not disclose information that may reveal a student's transgender status or gender nonconforming presentation to others ~~including parents and other school personnel,~~ unless legally required to do so or unless the student has authorized such disclosure.  Transgender and gender nonconforming students have the right to discuss and express their gender identity and expression openly and to decide when, with whom, and how much to share private information.  **Nothing herein shall be construed to change the obligation of the school to take action when student safety is concerned.** When ~~contacting the parent or guardian of~~ **referring to** a

2

transgender or gender nonconforming student, school personnel should use the student's legal name and the pronoun corresponding to the student's gender assigned at birth unless the student, parent, or guardian has specified otherwise. Any student who has a need or desire for increased privacy, regardless of the underlying reason, should be provided with a reasonable alternative to meet the need for that individual's privacy, regardless of gender identity.

The plaintiff alleges that both the original and amended policies, which she appended to her complaint, "suffer the infirmities set forth in this Complaint." Resolving this appeal does not require us to consider the original and amended policies separately; accordingly, we refer to both policies collectively as "the Policy."

[¶3] The plaintiff states that she is the parent of a minor child (M.C.) enrolled in school in the District. In the fall of 2021, the plaintiff discovered, through an inadvertent disclosure by a teacher, that M.C. had asked teachers and students to call M.C. by a name typically associated with a different gender than that assigned to M.C. at birth. The plaintiff informed M.C.'s guidance counselors and others at the school that "she would like the school to continue to treat M.C. according to M.C.'s birth gender, to address M.C. by . . . M.C.'s given name . . . , and to address M.C. using the pronouns that correspond to M.C.'s biological sex."

[¶4] Initially, some of M.C.'s teachers indicated that they would respect the plaintiff's wishes. Soon thereafter, however, the principal emailed the plaintiff and explained that while the principal respected and understood her "concern, we are held by the District policy as a staff." The principal explained that, under the Policy, staff was required to call M.C. by M.C.'s desired name and could not "disclose a student's choice to parents if asked not to."

[¶5] After receiving the principal's email, the plaintiff "discussed issues related to gender expression, birth-name usage, and pronouns with M.C." The plaintiff subsequently learned, through representations by both M.C. and school personnel, that M.C. asked school personnel to use M.C.'s birth name and pronouns and that school personnel were doing so. Nevertheless, the plaintiff alleged that "the continued existence of the Policy means that [she] cannot know whether representations by District personnel are factually true, or whether the District personnel are simply following the Policy by misleading and/or lying to [her] about M.C.'s in-school gender expression and the District's response thereto."

[¶6] In May 2022, the plaintiff brought the instant action seeking a declaratory judgment that the Policy violates Part I, Article 2 of the New Hampshire Constitution, both facially and as applied, is ultra vires, and

3

violates both the federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (2018) (FERPA), and the federal Protection of Pupil Rights Act, 20 U.S.C. § 1232h (2018) (PPRA). In addition, the plaintiff sought temporary and permanent injunctions, nominal damages, and attorney's fees.

[¶7] The defendants filed a motion to dismiss, which the trial court granted. With respect to the plaintiff's constitutional claim, the court found that because the Policy did not infringe upon a fundamental right, strict scrutiny review was not warranted. The court then found, under the rational basis test, that the Policy was not unconstitutional. The court further found that the plaintiff failed to state a claim that the Policy was ultra vires, and the court determined that the Policy did not violate either FERPA or PPRA.

[¶8] The plaintiff appealed, initially raising in her notice of appeal the question whether the trial court erred in dismissing all counts of her complaint. Because she briefed only a challenge to the trial court's ruling on her constitutional claim, we deem any challenge involving the other counts to be waived. See Fiske v. Warden, N.H. State Prison, 175 N.H. 526, 530 (2022).

II. Analysis

[¶9] The plaintiff appeals the trial court's dismissal of both her facial and as-applied constitutional challenges to the Policy, arguing that the trial court erred in finding the Policy did not violate her "constitutional parenting rights." The single question presented for our review asks: "Did the superior court err in dismissing the First Amended Complaint when it found that the Policy did not violate the plaintiff's constitutional parenting rights, despite the allegation that the Policy encourages school officials to affirmatively conceal her child's open and public gender identity transition in school from her?"

[¶10] The plaintiff's argument is based upon the State Constitution; accordingly, we base our decision solely on the State Constitution and cite federal cases for guidance only. See State v. Ball, 124 N.H. 226, 231-33 (1983). In reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Granite State Trade Sch. v. N.H. Mechanical Licensing Bd., 175 N.H. 708, 710 (2023). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. Id. However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law. Id. We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief. Id.

4

Part I, Article 2 of the New Hampshire Constitution provides:
All men have certain natural, essential, and inherent rights—among which are, the enjoying and defending life and liberty; acquiring, possessing, and protecting, property; and, in a word, of seeking and obtaining happiness. Equality of rights under the law shall not be denied or abridged by this state on account of race, creed, color, sex or national origin.

"We have long recognized the right to raise and care for one's children as a fundamental liberty interest protected by Part I, Article 2 of the State Constitution." In the Matter of Nelson & Horsley, 149 N.H. 545, 547 (2003). "Similarly, United States Supreme Court precedent recognizes 'that the Due Process Clause of the Fourteenth Amendment [to the Federal Constitution] protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 66 (2000) (plurality opinion)). "This judicial reluctance to interfere with parental prerogatives derives, historically, from the notion that parents have a natural entitlement to the exclusive companionship, care, custody, and management of their children." Id. at 547-48. "The right of parents to raise their children without interference is a fundamental liberty interest deserving of the highest level of protection." Id. at 548. As we have recognized, the issue of infringement of parental rights implicates substantive due process. See In re J.H., 171 N.H. 40, 50-51 (2018) (addressing claimed infringement of parenting rights under substantive due process).

[¶11] While we have not previously addressed the scope of the right to parent in the public school context, other courts have done so. For example, the United States Court of Appeals for the Sixth Circuit has opined on the limits of the federal right in this context, observing that "while this right plainly extends to the public school setting, it is not an unqualified right." Blau v. Fort Thomas Public School Dist., 401 F.3d 381, 395 (6th Cir. 2005) (citing Runyon v. McCrary, 427 U.S. 160, 177 (1976)). The court stated:

While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

Id. at 395-96 (quoting Goss v. Lopez, 419 U.S. 565, 578 (1975)).

[¶12] The questions thus become what is the scope of the fundamental right to parent and how does the Policy implicate it. The dissent cites decisions

from federal district courts in support of the plaintiff's view. We believe these cases are inapposite to our task of resolving whether this particular policy is in conflict with the New Hampshire Constitution. In any event, we respectfully note that there appear to be differences among federal district courts in addressing cases such as this. See Doe v. Del. Valley Reg'l High Sch. Bd. of Educ., No. 24-00107, 2024 WL 706797, at *11 (D.N.J. Feb. 21, 2024) (finding that the United States Constitution does not mandate school districts to notify parents of a minor's gender identity and receive consent before using alternative names and pronouns).

[¶13] Returning to New Hampshire law, our parental rights cases have involved severe intrusions on the most basic rights to the care and custody of a child, such as termination of parental rights, withholding of custody from a parent, and the granting of guardianship or custodial rights to a non-parent over a parent's objection. See, e.g., In re Shannon M., 146 N.H. 22, 27 (2001) (agreeing that "[b]ecause parental rights are fundamental under the New Hampshire Constitution, the party seeking to terminate parental rights must prove the statutory ground for termination beyond a reasonable doubt" (quotation omitted)); In re J.H., 171 N.H. at 51 (noting that "requiring Father, a non-neglectful and presumptively fit parent, to demonstrate his compliance with conditions before the children can be returned to his custody violates his fundamental right to parent"); In re Guardianship of Nicholas P., 162 N.H. 199, 200, 203, 205 (2011) (concluding that grant of guardianship to child's half-brother over mother's objection did not violate mother's parenting rights because the guardianship statute "safeguards a parent's fundamental rights by imposing a high evidentiary standard — that is, by requiring a non-parent seeking a substitute guardianship to establish the need for it by clear and convincing evidence"); Nelson & Horsley, 149 N.H. at 549 (holding "that it would violate the fit natural or adoptive parent's State constitutional rights to grant custodial rights to an unrelated third person over the express objection of that parent").

[¶14] By its terms, the Policy does not directly implicate a parent's ability to raise and care for his or her child. It encourages school personnel to not disclose information that may reveal a student's transgender status, but contrary to the principal's assertion to the plaintiff, the Policy does not require non-disclosure. Thus, even under the Policy, school personnel may disclose the information. Further, the Policy does not restrict a parent's ability to learn information from other sources, including from the child. The Policy does not encourage students to hide information from their parents or prevent students from sharing information. The Policy does permit non-disclosure in response to a parent's question seeking that information. However, as the trial court observed:

[T]he Policy does not prevent parents from observing their children's behavior, moods, and activities; talking to their children; providing

6

religious or other education to their children; choosing where their children live and go to school; obtaining medical care and counseling for their children; monitoring their children's communications on social media; choosing with whom their children may socialize; and deciding what their children may do in their free time. In short, the Policy places no limits on the plaintiff's ability to parent her child as she sees fit.

We cannot conclude that any interference with parental rights which may result from non-disclosure is of constitutional dimension. This potential interference stands in stark contrast, for example, to circumstances in which we have found the right to parent implicated where parental custody was in jeopardy. See Nelson & Horsley, 149 N.H. at 549.

[¶15] Accordingly, the plaintiff has failed to demonstrate that the Policy infringes a fundamental parenting right protected by Part I, Article 2. It follows, then, that strict scrutiny review is inappropriate, and the trial court did not err by applying the rational basis test. See Petition of Whitman Operating Co., 174 N.H. 453, 462 (2021) (applying rational basis standard of review when no fundamental right or protected liberty interest is at stake). The plaintiff does not challenge the trial court's finding that the Policy survives rational basis review, and, therefore, we do not disturb that finding. Moreover, because we read the court's order to find that, under rational basis review, the Policy survives both the plaintiff's facial and as-applied challenges, we need not address those challenges separately.

[¶16] Finally, we observe that the parties in this case did not advocate for a standard in their briefs by which we should analyze the potential expansion of existing substantive due process rights, or the existence of previously unrecognized substantive due process rights, under our State Constitution. We note that our present case law offers little guidance on this issue. In this case, we did not articulate a standard as it was unnecessary to resolve this appeal. We invite parties in future cases involving substantive due process rights to suggest a formulation of the standard to be applied under our State Constitution.

[¶17] For the foregoing reasons, we affirm the trial court's order granting the defendants' motion to dismiss.

Affirmed.

BASSETT and DONOVAN, JJ., concurred; COUNTWAY, J., dissented; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

7

COUNTWAY, J.

[¶18] Because I believe that strict scrutiny should be applied in this case, I respectfully dissent.

[¶19] This case involves a substantive due process challenge to a Policy, which, I believe, on its face, interferes with a parent's fundamental right to parent. I believe that this case—which involves whether a public school may conceal from a child's parent the child's decision to identify as a gender other than that assigned at birth—implicates such a right. Cf. Tatel v. Mt. Lebanon Sch. Dist., 675 F. Supp. 3d 551, 569 (W.D. Pa. 2023) (noting that the school-related defendants' "alleged conduct implicates the violation of parental interests of the greatest importance about forming the gender identity of their children"); Ricard v. USD 475 Geary Cnty., KS Sch. Bd., No. 5:22-cv-04015-HLT-GEB, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022) (opining that "[i]t is difficult to envision why a school would even claim—much less how a school could establish—a generalized interest in withholding or concealing from the parents of minor children, information fundamental to a child's identity, personhood, and mental and emotional well-being such as their preferred name and pronouns").

[¶20] The Policy directs that, absent the child's consent, "[s]chool personnel should not disclose information that may reveal a student's transgender status or gender nonconforming presentation to others." (Emphasis added.) Unlike the majority, I read this language to require school personnel to affirmatively conceal a child's gender preferences from the child's parent even if the parent asks for such information. According to the plaintiff's complaint, even the school principal in this case interpreted the Policy this way, stating that under the Policy, staff was required to call M.C. by M.C.'s desired name and could not "disclose a student's choice to parents if asked not to." Because accurate information in response to parents' inquiries about a child's expressed gender identity is imperative to the parents' ability to assist and guide their child, I conclude that a school's withholding of such information implicates the parents' fundamental right to raise and care for the child. Cf. Willey v. Sweetwater County School District No. 1, 680 F. Supp. 3d 1250, 1277 (D. Wyo. 2023) (noting that "[t]o the extent [a school policy] prohibits a teacher or school employee, upon inquiry by a parent or legal guardian, from responding or providing accurate and complete information concerning their minor child (and absent a threat to the wellbeing of the student), it burdens a parent's fundamental right to make decisions concerning the care, custody and education of their child").

[¶21] "When dealing with legislative activity in the area of fundamental rights this court has applied the strict scrutiny test." State v. Robert H., 118 N.H. 713, 716 (1978), overruled on other grounds by In re Craig T., 147 N.H. 739, 744-45 (2002). In Robert H., we applied strict scrutiny to the statutory

8

scheme governing termination of parental rights because "[t]he family and the rights of parents over it are held to be natural, essential, and inherent rights within the meaning of New Hampshire Constitution, part I, article 2." Id. In a subsequent, fractured opinion of this court, although the justices could not agree on a standard for grandparent visitation, they did agree, explicitly or implicitly, on the constitutional significance of parental rights and the application of strict scrutiny. See In the Matter of R.A. & J.M., 153 N.H. 82, 95, 110, 114 (2005). Because the Policy burdens parents' fundamental right "to make decisions concerning the care, custody and education of their child[ren]," Willey, 680 F. Supp. 3d at 1277, I further conclude that our precedents dictate the application of strict scrutiny and that the trial court erred in dismissing the plaintiff's constitutional claim. Accordingly, I respectfully dissent.